STEPHEN T. PROBETT v. ELIZA JANE JENKINSON.

*Deed—Construction—Description.*

Where after conveying a parcel of land described in the deed as having an equal frontage front and rear, and known as the westerly part of a designated lot, the grantor conveys to a third party the remainder of the lot, describing it as bounded on one side by the land owned by the first grantee, "intending hereby to convey * * * the easterly half of said lot," the question as to the title of the first grantee, who afterwards secured a quitclaim to the west half, hinges, not upon the intention of the parties respecting the land intended to be conveyed by said deed,—it appearing that the grantor and

first grantee supposed that the lot, a portion of which was conveyed, was of the same width from front to rear, and that the deed included all of the west half of the lot, and that, when the second deed was made, the grantor supposed that all of said west half of said lot had been conveyed to the first grantee, and that the second deed included the remainder of the lot,—but rather upon the construction to be given to the description of land in said second deed; the case being ruled by *Plummer v. Gould*, 92 Mich. 1.

Appeal from St. Clair. (Canfield, J., presiding.) Submitted on briefs February 14, 1895. Decided May 28, 1895.

Bill to quiet title. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*H. W. Stevens*, for complainant.

*Frank Whipple* and *S. W. Vance*, for defendant.

McGRATH, C. J. This is a bill to quiet title to a gore-shaped parcel of land, which was included in what was known as the "Steam-Mill Reserve," on Black river, in the city of Port Huron. The reserve fronted on the river, and the land adjoining on the north, east, and west was platted prior to 1837. In 1866 Skinner & Ames, the then owners of the reserve, subscribed and recorded the plat. In that plat the parcel lying south of River street and west of Seventh street bridge was distinguished as "Lot C." In 1876 Skinner & Ames subdivided lot C according to the following plat:

This plat was not acknowledged or recorded. In the same year they mortgaged lots 1, 2, 3, and 4 to one Fish, and later in that year gave a mortgage to Martha C. T. Williams, of Detroit, upon the remainder of said lots. The description in the Williams mortgage is as follows:

"Lots 5, 6, 7, 8, 9, 10, 11, and 12 in the Skinner & Ames plat of a part of the Black River Steam-Mill Reserve, being all that part of said reserve south of River street and west of Seventh street bridge, except lots 1, 2, 3, and 4, shaded green in the map hereto annexed."

As stated in the mortgage, there was attached to it a map, which was a copy of the original plat in the possession of Skinner & Ames, in so far as the lots south of

River street and west of Seventh street bridge were concerned, except that it did not have the letter C upon it, nor did it have all of the dimensions and monuments that were upon the original plat. Lot 10 is shown on this map as being 50 feet on River street, and very much wider upon Black river, but the figures indicating its width on the river are not given as they are on the original plat, where they are stated at 90 feet. This map was a tracing made on the same scale as the original plat, and when the mortgage came to be recorded the map was detached from the mortgage, and attached to the record in the register's office, where it has since remained.

In February, 1878, complainant purchased from Skinner & Ames lots 11 and 12. Subsequently Mrs. Williams' mortgage was foreclosed in chancery, and on the 28th of January, 1880, all of the lots described in the mortgage were bid off to Mrs. Martha C. T. Williams. On the 27th day of July, 1880, Mrs. Williams conveyed the two lots to the complainant, describing them as follows:

"Lots 11 and 12 according to the Skinner & Ames plat of a subdivision of part of the Black River Steam-Mill Reserve, in said city of Port Huron, south of River street and west of Seventh street bridge, being lots now occupied by said Probett, and on which he has located lime-kilns, and were conveyed to him by Thomas S. Skinner and wife and Wallace Ames and wife."

The next year, in May, 1881, the complainant, desiring more land, through Mr. B. C. Farrand, an attorney at Port Huron, applied to Mr. Elisha Taylor, representing Mrs. Martha C. T. Williams, to know what Mrs. Williams would take for lot 10, or for the west half of that lot, and received a reply that she would take $1,000 for the whole lot, or $600 for the west half of it. The complainant accepted the proposition for one-half of the lot at $600; and on the 10th day of May, 1881, Mr. Elisha Taylor drew up the deed, and it was executed by Mrs. Williams, and sent, through Mr. Farrand, to the com-

plainant. When this deed was drawn, Mr. Taylor supposed the lot was 50 feet wide both on the river and on River street, whereas, as a matter of fact, it was 50 feet wide on River street, and had a frontage on Black river of 90 feet. The description in this deed is as follows:

"A parcel of land 25 feet wide in front on the south side of River street, and of the same width extending southerly to the channel bank of Black river, and known as the westerly part of lot No. 10 of the Skinner & Ames plat, south of River street and west of Seventh street."

The complainant purchased the west half of lot 10 in May, and in June, following, John Jenkinson, the husband of the defendant, through Mr. Elisha Taylor, contracted with Mrs. Williams for the purchase of lots 5, 6, 7, 8, 9, and the easterly half of lot 10, according to said Skinner & Ames plat of said Steam-Mill Reserve. The date of this contract is fixed by John Jenkinson as in June, 1881. There was nothing upon the ground to designate where the division line between the east half of lot 10 and the west half of such lot should be located when complainant purchased, or when Mr. John Jenkinson contracted for the east half, nor was there at the time when the defendant afterwards obtained her deed from Mrs. Williams; but the premises were what might be termed open, or a common, so far as anything indicating the division line between complainant's and defendant's premises. On the 23d day of July, 1884, at the request of John Jenkinson, the husband of the defendant, Mrs. Martha C. T. Williams, through Mr. Elisha Taylor, executed and delivered to the defendant a deed of the lands embraced in the contract, describing them in such deed as follows:

"All that part of the Black River Steam-Mill Reserve situated and lying between River street and Black river, and bounded on the westerly side by land owned by Stephen T. Probett, and bounded on the easterly side by River street, and lots numbered 1, 2, 3, and 4 of Skinner

& Ames plat, and mortgaged by Skinner & Ames to
Arthur Fish, and south by the channel bank of Black
river,—intending hereby to convey lots numbered 5, 6,
7, 8, 9, and the easterly half of lot 10, according to the
Skinner & Ames plat of that part of said reserve, with-
out guaranteeing the correctness of said plat, though it
is supposed to be correct; subject to all taxes and assess-
ments in the year 1881 and subsequently, which the now
party of the second part assumes, and is to pay and can-
cel, if not already paid."

The deed was recorded on July 31, 1884.  On the 24th
day of July, 1884, John Jenkinson and his wife, the
defendant, Eliza Jane Jenkinson, made a mortgage to
the Michigan Mutual Life Insurance Company upon the
east half of lot 10, and other lands, describing said land
in said mortgage as follows:

"Lots 5, 6, 7, 8, 9, and the east half of lot 10, of that
part of Black River Steam-Mill Reserve lying between
River street and Black river, bounded on the west by
land owned and occupied by Stephen T. Probett, on the
east by land mortgaged by Skinner & Ames to Arthur
Fish, August 26, 1876; said lots being numbered accord-
ing to Skinner & Ames plat of a part of said Black River
Steam-Mill Reserve."

The application to the insurance company was made
by Mr. Jenkinson and his wife, through Mr. Farrand,
for the purpose of taking up the contract and obtaining
the deed.  This deed and mortgage were executed three
years after the execution of the deed by Mrs. Williams
to the complainant of the west half of the lot, and like-
wise three years after the contract made by her to the
husband of the defendant, of the east half of said lot.
At the time that the complainant purchased the west
half of lot 10, he had not seen the plat, or a copy of the
plat, referred to as the "Skinner & Ames Plat," and did
not till 1885, when he went to Mr. Skinner, and was
shown the plat; and, at the time that Mr. Taylor drew
the deed to the complainant for the west half of lot 10,

Taylor had no knowledge in regard to the width of the lot on the river.

In 1885 John Jenkinson asserted to complainant that the latter only had 125 feet, and complainant then examined his deed, and also saw Mr. Skinner, and obtained from him the original plat, and took the same to Detroit, and showed it, together with his deed, to Mr. Taylor; and Mr. Taylor, in order to correct the mistake which had been made, on the 14th day of December, 1885, drew up and had executed a quitclaim deed from Mrs. Martha C. T. Williams to the complainant of the west half of lot 10, which deed was recorded December 16, 1885.

It is clear from this record that, when complainant purchased the portion of lot 10, both he and Taylor supposed that said lot was of the same width from front to rear; that both supposed that the conveyance made included all of the west half of lot 10; and that, when the conveyance was made to Jenkinson, Taylor then supposed that the west half of lot 10 had hitherto been conveyed to Probett, and that the conveyance then being made included all of the remainder of said lot 10. The question, however, hinges, not upon the intention of the parties respecting the land intended to be conveyed by the deed to complainant, but rather upon the construction to be given to the description in the deed from Martha C. T. Williams to defendant. The case is, we think, ruled by *Plummer v. Gould,* 92 Mich. 1. The intention of the grantor is clearly expressed in the conveyance to defendant. Defendant contends that she went upon the land, and that a line corresponding to the line as given in the conveyance to complainant was pointed out to her by Probett as the east line of his land, but this is denied. She had examined a plat which, although it did not give distances on the south line, clearly indicated that the lots were wider on the river, and she accepted

the deed, which clearly expressed the grantor's intention.

The decree is affirmed, with costs to complainant.

The other Justices concurred.